UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JOSEPH IOIME, on behalf of himself
And all others similarly situated,

      Plaintiff,

v.                                Case No.: 5:15-cv-130-OC-30-PRL

BLANCHARD, MERRIAM, ADEL &
KIRKLAND, P.A., et al.,

      Defendants.
_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Joseph Ioime, individually and on behalf of all others similarly situated ("Plaintiff" or "Ioime"), files this Memorandum of Law in Support of the Joint Motion for Final Approval of the proposed Class Action Settlement. ("Motion"). This memorandum is submitted in support of final approval of the Parties' class action settlement. If granted final approval, the Settlement will resolve the claims of the Plaintiff and the Class and bring this complex litigation to a conclusion. Final Approval should be granted because the Settlement Agreement is fair, adequate and reasonable, and provides substantial non-monetary and monetary Settlement benefits to the Class.

**MEMORANDUM OF LAW**

    **I.    INTRODUCTION**

        **A. Nature of the Lawsuit**

This class action involves a standardized, one-page debt collection communication, titled "Notice Under The Fair Debt Collection Practices Act." (hereinafter "Notice"). The Notice is a standardized form Notice accompanying communications between BMAK LAW FIRM and the debtors it seeks to collect debts from. The pertinent parts of the Notice provide:

**NOTICE UNDER THE FAIR DEBT COLLECTION
PRACTICES ACT (The Act)
15 U.S.C. 1601, et seq., As Amended**

As of December 1, 2014, you owe the total amount of $XXXXX, as set forth in the document to which this Notice is attached.

The name of the Creditor is: XXXXX

The debt described in the document attached to this Notice will be assumed to be valid by the creditor's law firm unless the debtor or the debtor's attorney, within thirty (30) days of receipt of this notice, disputes, in <u>writing</u>, the validity of the debt or any portion thereof.

…

Written requests <u>required</u> by the Act should be addressed to: BRADFORD J. TROPELLO, ESQUIRE, of the law firm of Blanchard, Merriam, Adel & Kirkland, P.A., Post Office Box 1869, Ocala, Florida 34478.

Plaintiff asserts that the Notice violates both the FDCPA and FCCPA because 15 U.S.C. § 1692g(a)(3) and state law set forth no limitation as to the manner in which a consumer can dispute the validity of the alleged debt. However, in its Notice, BMAK states that in order to dispute the validity of the debt, Plaintiff and the class must notify the debt collector "in writing." The Notice does not allow for any other methods of communication, such as a phone call, email or facsimile from the consumer to dispute the validity of the debt. Plaintiff asserts that by requiring debtors to dispute the validity of their debts "in writing," BMAK unlawfully attempted to curtail some of the debtors' rights, including those that are triggered when a consumer disputes the debt through oral statement. Specifically, Plaintiff alleges that Defendant's Notice violates FDCPA sections 1692g and 1692e, as well as the FCCPA sections 559.72(7) and (9).

Notice was issued to all members of the Settlement Class pursuant to this Court's Preliminary Approval Order as stated in an affidavit of the Settlement Administrator. (See Exhibit 1, Affidavit of Settlement Administrator). As of the date of this filing, no class members have opted out of the Settlement and no class members have objected to the terms of

the Settlement.

## II.   NATURE OF THE PROPOSED SETTLEMENT

### A.   The Settlement Was Negotiated at Arm's Length

This Settlement was reached after extensive settlement negotiations over the course of many months. The negotiations took place between experienced counsel and were contentious and broke down on more than one occasion. The parties finally reached a Class Action Settlement Agreement that was fully executed on February 11, 2016, ("Settlement Agreement"). At no time was there any fraud or collusion involved in these settlement negotiations.

### B.   Relief to the Class

Under the terms of the Settlement, BMAK will create a $6,000.00 Settlement Fund that will be disbursed to all Claiming Class Members on a pro-rata basis. As of May 2, 2016, 36 class members have filed claims, which results in a potential settlement payment of $166.00 for each claiming Class Member.

Furthermore, the Representative Plaintiff and Class Members agree to release BMAK from all claims related to the violations of the Fair Debt Collection Practices Act and the Florida Consumer Collection Practices Act as set forth in the operative Complaint in return for the Settlement Benefits.

These Settlement benefits are well within the range of damages alleged in the Complaint. Both the FDCPA and the FCCPA cap damages at one percent of the defendant's net worth. Because BMAK has presented evidence that its net worth is zero, the value of the settlement fund is above what the class would have received at trial.

### C.   Class Notice

On March 3, 2016, the Court granted the Plaintiff's Unopposed Motion for Preliminary Approval. In the Court's Preliminary Approval Order, the Court approved the form, substance, and

3

requirements of the Notice of Settlement (the "Notice"). Thereafter, Notice was emailed and mailed to the Settlement Class Members to the mailing address on file with BMAK. Notices sent by U.S. Mail were verified by the Settlement Administrator, prior to mailing, by processing the addresses through the Coding Accuracy Support System ("CASS") and the National Change of Address ("NCOA") databases. As of the date of this filing, only one (1) mailed notice was returned as undeliverable with no forwarding address. See Exhibit 1. This Court previously determined that this Notice procedure met the requirements of the Florida Rules of Civil Procedure and due process, and constituted the best notice practicable under the circumstances.

As of May 3, 2016, the Claims Administrator has determined that no class members have opted out of the Settlement and no class members have objected to the terms of the Settlement. See Exhibit 1.

### D. Relief to the Class Representative

Under the Settlement Agreement, Class Representative, Joseph Ioime, shall receive a Class Representative Incentive Award in the amount of two thousand dollars ($2,000.00) for his contribution to the litigation.

### E. Attorney Fees and Expenses

Plaintiff and the Class have been represented by the law firm of Varnell & Warwick, P.A. in this matter. The FDCPA and FCCPA claims asserted in this action both include fee shifting provisions that do not fall within the statutory damages cap. As such, attorney fees and costs to Class Counsel are being paid over and above the Settlement Funds being distributed to the Class. BMAK has agreed to pay Class Counsel a total of $28,000.00, inclusive of all attorney fees and litigation expenses. This amount represents less than Class Counsel's Lodestar and does not include any multiplier.

4

## III. THE SETTLEMENT CLEARLY SATISFIES THE APPLICABLE STANDARDS FOR FINAL APPROVAL

Federal Rules of Civil Procedure 23(a) and (b)(3) requires judicial approval of any class action settlement. To approve a class action settlement, the Court must evaluate whether the settlement is "fair, adequate and reasonable and is not the product of collusion between the parties." In re Managed Care Litig., Master File No. 00-1334-MD-Moreno, 2003 WL 22850070, *2 (S.D. Fla. October 24, 2003); Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. I 984)(*citing* Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977).[1] "When a settlement agreement, as here, has been preliminarily approved, it is 'presumptively reasonable'". Allapattah Servs. Inc. v. Exxon Corp., 91-0986-CIV, 2006 WL 1132371, *10 (S.D. Fla. April 7, 2006).

To evaluate whether a settlement is fair and reasonable, Florida courts apply the factors set forth in Bennett v. Behring Corp., 737 F.2d 982 (11th Cir. 1984). While a court must apply these factors, a trial court "ought not to try the case during the settlement hearing and should be hesitant to substitute his or her judgment for that of counsel." Allapatah, at *10 (*citing* In re Smith, 926 F.2d 1027, 1028-1029 (11th Cir. 1991); Strube v. Am. Equity Inv. Life Ins. Co., 226 F.R.D. 688, 697 (M.D. Fla. 2005) (recognizing that review of the fairness of a class action settlement does not require a court engage in an analysis as to the merits of the case). A trial court should not make the parties "justify each term of settlement against a hypothetical or speculative measure of what concessions might [be] gained" as a court must be mindful that "compromise is the essence of settlement." Allapatah, 2006 WL 1 132371, at *10 (quoting Cotton, 558 F.2d at 1330). In addition, there is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." Ass'n for Disabled Americans,

---

[1] *See* Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc)(adopting all decision of the former Fifth Circuit announced prior to October 1, 1981, as binding precedent in the Eleventh Circuit.

Inc. v. Amoco Oil Co., 211 F.R.D. 457, 466 (S.D. Fla. 2002); Bennett, 737 F.2d at 986 (recognizing that a court's judgment is "informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement") (citing United States v. City of Miami, 614 F.2d 1322, 1344 (5th Cir. 1980).

The Bennett factors are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was reached. Bennett, 737 F.2d at 986 (the "Bennett Factors").

### A. Likelihood of Success At Trial

Because the claims at issue are based on statutory interpretation, Plaintiffs stood a strong likelihood of success at trial. As a result, this Settlement was reached relatively early in the litigation and provides Class Members with a substantial benefit. Accordingly, this factor indicates that prolonged discovery and/or trial would be unnecessary in reaching a fair resolution. This factor, therefore, weighs in favor of approval.

### B. Range of Possible Recovery And the Fairness of the Settlement Within That Range

The second and third Bennett factors compare the benefits provided by the Settlement to the benefits that could have been received if the case had proceeded to trial. The Settlement satisfies these two Bennett factors because the Class could not have received much more, if any, at a trial on the merits. In fact, if BMAK were able to prove its negative Net Worth, the class would receive no recovery under either the FDCPA or FCCPA claim.

Therefore, while the Plaintiff had a substantial likelihood of success on the merits the amount of the potential recovery may have been much lower. Accordingly, these two factors also

6

support the Settlement.

### C.   Complexity, Expenses and Duration of Litigation

The fourth <u>Bennett</u> factor requires consideration of the complexity, expense and duration of the litigation. There can be little doubt that this case would likely take a considerable amount of additional time to complete. Although class certification discovery was complete, Plaintiff's Motion for Class Certification had not been granted, and a trial on the merits would still have to be completed, along with any potentially corresponding appeals. The only parties that would benefit from this continued litigation would have been the lawyers on both sides of this matter who would have spent many more hours of additional time and effort but may not have produced any substantial additional benefit to the Class above what is offered in this Settlement. Accordingly, the consideration of these issues supports the Settlement and the fourth <u>Bennett</u> factor.

### D.   Substance and Amount of Opposition to the Settlement

The fifth <u>Bennett</u> factor requires consideration of the substance and amount of opposition to a proposed settlement. As of the date of this filing, the Settlement Administrator has determined that no class members have opted out of the Settlement and no class members have objected to the terms of the Settlement. (Exhibit 1). In addition, the Settlement Administrator has determined that 36 class members have filed claims as of May 2, 2016. This indicates that the claim forms were understandable and were delivered to their intended recipients.

The fact that no class members opted out or objected to the settlement indicates that the vast majority of the Class viewed the terms of the settlement as fair, adequate, and reasonable. See <u>Allapattah Servs. Inc.</u>, 2006 WL 1 132371, at *12 (determining that the lack of objections to a settlement is a "significant factor" in determining whether the proposed settlement is fair); <u>Strougo v. Brazilian Equity Fund, Inc.</u>, 258 F.Supp.2d 254, 258 (S.D.N.Y. 2003)(determining that since no objections to a proposed settlement were received, "those affected by the proposed settlement have

overwhelmingly endorsed it as 'fair and reasonable', as it "has repeatedly been held that 'one indication of the fairness of a settlement is the lack of or small number of objections'"); In Re SmithKline Beckman Corp. Sec. Litig., 751 F.Supp. 525, 530 (E.D. Pa 1990)(noting that the "utter absence of objections and nominal number of shareholders who have exercised their right to opt out. . . militate strongly in favor of approval of the settlement").  As a result, this Bennett factor also weighs in favor of final approval.

      E.      **Stage of the Proceedings at Which the Settlement was Reached**

The final Bennett factor requires consideration of the stage of proceedings at which a settlement was achieved.  This is not a class action that was settled before the parties fully understood the complexities of the litigation.  The parties exchanged discovery so that the total class size could be determined and the statutes at issue are relatively straight forward with regard to whether objections to the debts allegedly owed must be made in writing. Therefore, the monetary payment to the Class Members now, potentially several years before entry of final judgment in favor of either party, weighs heavily in favor of approving the Settlement.  *See* Borcea Carnival Corp., 238 F.R.D. 664, 674 (S.D. Fla. 2006) (determining that a "class obtained a significant benefit from the relatively rapid litigation and settlement of this case", in recognizing that a court "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise of the mere possibility of relief in the future, after protracted and extensive litigation.  In this respect, '[i)t has been held  proper to take the bird in the hand instead of a prospective flock in the bush.'", quoting In re Shell Oil Refinery, 155 F.R.D. 552, 560 (E.D. La. 1993)).

Accordingly, all the Bennett factors support a finding by this Court that the proposed Settlement is fair, adequate and reasonable and Final Approval should be given.

## IV. CLASS REPRESENTATIVE "SERVICE AWARD" IS FAIR, ADEQUATE AND REASONABLE

Traditionally, class representatives are compensated for the time and effort in bringing the litigation on behalf of others through what is termed a "service" or "incentive" award. Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." Allapattah Services, Inc. v. Exxon Corp., 454 F.Supp.2d 1185, 1218 (S.D.Fla.2006). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." David v. American Suzuki Motor Corp., 2010 WL 1628362, at *6 (S.D.Fla. Apr. 15, 2010). Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. See, e.g., Ingram v. The Coca–Cola Co., 200 F.R.D. 685, 694 (N.D.Ga.2001) (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the class warrants a substantial incentive award."); Spicer v. Chi. Bd. Options Exchange, Inc., 844 F.Supp. 1226, 1267–68 (N.D.Ill.1993) (collecting cases approving service awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff). Courts have found it appropriate to specially reward named class plaintiffs for the benefits they have conferred. See Allapattah Servs., Inc. v. Exxon Corp., 454 F.Supp.2d 1185, 1218-19 (S.D.Fla.2006); In re Dun & Bradstreet Credit Servs. Customer Litig., 130 F.R.D. 366 (S.D.Ohio 1990) (two incentive awards of $55,000, and three incentive awards of $35,000); Bogosian v. Gulf Oil Corp., 621 F.Supp. 27 (E.D.Pa.1985) (incentive awards of $20,000 to each of two plaintiffs); In re REVCO Sec. Litig., Arsam Co. v. Salomon Bros., Inc., 1992 WL 118800, 1992 U.S. Dist. LEXIS 7852 (N.D.Ohio May 5, 1992) ($200,000 to the named plaintiff); Enter Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240 (S.D.Ohio 1991) ($50,000 to each class representative, aggregate award of $300,000).

Here, Mr. Ioime fully participated in representing the class by compiling data and

cooperating with class counsel. In addition, Mr. Ioime attended a full day of mediation which took more than 10 hours to complete. Accordingly, the $2,000.00 Service Award set forth in the Settlement Agreement should be approved because of the time spent by Mr. Ioime personally participating in this litigation and the benefits obtained. This Court should finally approve the incentive award set forth in the Settlement Agreement.

## V. PLAINTIFF'S ATTORNEY'S FEES AND EXPENSES ARE FAIR, ADEQUATE AND REASONABLE

"The starting point in fashioning an award of attorney's fees [in a FDCPA action] is to multiply the number of hours reasonably expended by a reasonable hourly rate." Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir.1994); Hepsen v. J.C. Christensen and Assocs., Inc., No. 10–12231, 2010 WL 3329836 (11th Cir. Aug.25, 2010) (calculating attorneys' fees under FDCPA using lodestar); Moton v. Nathan & Nathan, P. C., 297 Fed.Appx. 930, 931–32 (11th Cir.2008) (holding that lodestar analysis must be used to calculate attorney's fees under the FDCPA). The product of the reasonable hourly rate and the reasonable hours expended is known as the lodestar calculation. *See* Davis v. Locke, 936 F.2d 1208, 1215 (11th Cir.1991). Once the lodestar is calculated, this lodestar amount may be adjusted. Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292, 1302 (11th Cir.1988). However, such an adjustment is "rare" because "the **lodestar** method yields a fee that is presumptively sufficient to achieve this objective." Perdue v. Kenny A. ex rel. Winn, ––– U.S. ––––, 130 S.Ct. 1662, 1673, 176 L.Ed.2d 494 (2010).

The proposed Settlement contemplates a total payment of $28,000.00 in attorney fees and costs to Class Counsel. The fee negotiations were conducted at arm's-length, only after the terms of the Class benefits had been reached. Attached as Exhibit 2 is a declaration from lead Class Counsel, Brian Warwick, regarding the time spent on this litigation and the total Lodestar. As indicated, the total Lodestar for Varnell & Warwick in this matter equates to $43,950.00, which is

10

substantially more than the negotiated $28,000.00. When the costs and litigation expenses are added, Class Counsel is actually receiving significantly less than its Lodestar figure under this Settlement.

In light of the above case law and the fact that Class Counsel assumed the risk of this litigation on a contingency basis, the benefits provided by this Settlement, and the fact that BMAK has agreed to pay Class Counsel's attorney fees over and above the relief being provided to the Class, the attorney fee must be considered eminently reasonable.

Accordingly, the attorney fee is reasonable in light of the significant amount of time and effort expended by Class Counsel over the course of the litigation and this Court should approve the fee as fair, adequate and reasonable.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court grant final approval of the Class action Settlement and enter a Final Order and Judgment of Settlement Class and Finally Approving the Settlement in the form attached as Exhibit 1 to the Joint Motion.

DATED:  MAY 3, 2016                               **VARNELL & WARWICK, P.A.**

/s/ Brian W. Warwick
 Brian W. Warwick, FBN: 0605573
 Janet R. Varnell, FBN: 0071072
 Steven T. Simmons, Jr., FBN: 0091654
 P.O. Box 1870
 Lady Lake, FL  32158
 Telephone:   (352) 753-8600
 Facsimile:    (352) 504-3301
 *bwarwick@varnellandwarwick.com*
 *jvarnell@varnellandwarwick.com*
 *ssimmons@varnellandwarwick.com*
 *kstroly@varnellandwarwick.com*

COUNSEL FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

   I HEREBY CERTIFY that on this 3rd day of May, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the following:

**PATRICK M. DELONG**
**MARSHALL DENNEHEY WARNER**
**COLEMAN & GOGGIN**
100 NE Third Avenue, 11th Floor
Fort Lauderdale, FL 33301
PMDelong@mdwcg.com

            /s/ Brian W. Warwick
            **BRIAN W. WARWICK**